# EXHIBIT C

EXHIBIT C

**Erick P. Wolf**

**From:** Shanberg, Stefani E. [sshanberg@wsgr.com]
**Sent:** Tuesday, February 12, 2008 2:17 PM
**To:** Richard Cauley; Yoon, James
**Cc:** Franklin E. Gibbs; Erick P. Wolf; Amber Yordy; Dietzel, Brian
**Subject:** RE: DisplayLink's Markman Papers

Richard,

Please see attached in response to your inquiry of last evening. Please call or email if you want to discuss.

Best regards,

Stefani

**From:** Richard Cauley [mailto:rcauley@WHGLawFirm.com]
**Sent:** Monday, February 11, 2008 10:42 PM
**To:** Shanberg, Stefani E.; Yoon, James
**Cc:** Franklin E. Gibbs; Erick P. Wolf; Amber Yordy
**Subject:** DisplayLink's Markman Papers

James and Stefani:

I have had a chance to take a first look at the papers you filed this evening in support of your Markman briefing. As is evident, Dr. Jones' declaration contains a substantial amount of extrinsic evidence which was not disclosed, as required by Patent Local Rule 4-3(b), in the Joint Claim Construction Statement filed in December and on which we obviously did not have the opportunity to depose him.

Are you prepared to submit Dr. Jones for another deposition so that we may have the opportunity to depose him on this non-disclosed material? And, are you willing to stipulate that MCT may have additional time to respond to this belatedly-disclosed evidence?

Let me know as soon as possible.

Richard

This email and any attachments thereto may contain private, confidential, and privil
material for the sole use of the intended recipient. Any review, copying, or distri
this email (or any attachments thereto) by others is strictly prohibited. If you ar
intended recipient, please contact the sender immediately and permanently delete the
and any copies of this email and any attachments thereto.

WSGR  **Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

650 Page Mill Road
Palo Alto, CA 94304-1050
PHONE 650.493.9300
FAX 650.493.6811
www.wsgr.com

February 12, 2008

**VIA ELECTRONIC MAIL & U.S. MAIL**

Mr. Richard Cauley
Wang, Hartmann & Gibbs, PC
1301 Dove Street, Suite 1050
Newport Beach, California 92660
rcauley@whglawfirm.com

   Re: *DisplayLink Corp. v. Magic Control Technology Corp.*,
      U.S.D.C., Northern District of California, Case No. CV07-01998-RMW

Dear Richard:

  We write in response to your email of yesterday evening regarding the Declaration of Alan Jones ("Jones Declaration"). Exhibits 9, 12, 13, 15, and 16 were not cited in the parties' Joint Claim Construction Statement. As you have probably noticed, these exhibits were only referenced in the Background section of the DisplayLink's Responsive Claim Construction Brief. The Background section of DisplayLink's brief merely previews the technology tutorial DisplayLink will present at the hearing. These exhibits are not cited in support of or in opposition to any claim construction position. As such, we do not believe disclosure was required under Patent Local Rule 4-3(b) (requiring "identification of any extrinsic evidence known to the party on which it intends to rely either to support its proposed construction of the claim or to oppose any other party's construction of the claim …").

  On a related note, subsequent to yesterday's filing, we became aware of a separate concern pertaining to the Jones Declaration. As you know, Dr. Jones is in the United Kingdom. As such, we appear to have run into a version control issue regarding his declaration. The version of the declaration that Dr. Jones signed is attached. The version submitted with DisplayLink's brief was a little bit different. Specifically, it was reformatted; typographical errors, including citations to the '788 Patent, were corrected; and a pin cite in paragraph 29 was mistakenly changed from "1:7" to "1:2." With your permission, we intend to submit to the Court the correct version of the Jones Declaration (*i.e.*, the unmodified version that he signed yesterday).

3182422.1

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Mr. Richard Cauley
February 12, 2008
Page 2

      Please give me a call, or send me an email, if you care to further address either of these issues. We would like to resolve these issues as soon as possible.

                                  Sincerely,

                                  WILSON SONSINI GOODRICH & ROSATI
                                  Professional Corporation

                                  */s/ Stefani E. Shanberg*
                                  Stefani E. Shanberg

Enclosure

3182422.1

# EXHIBIT D

EXHIBIT D

LEXSEE 1998 U.S. DIST. LEXIS 17564


Caution
As of: Feb 26, 2008

ATMEL CORPORATION, Plaintiff, vs. INFORMATION STORAGE DEVICES, INC., Defendant.

No. C 95-1987 FMS

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

*1998 U.S. Dist. LEXIS 17564*

November 4, 1998, Decided
November 5, 1998, Filed; November 5, 1998, Entered in Civil Docket

**DISPOSITION:** [*1] Atmel's motion to amend claim chart DENIED; ISD's motion for summary judgment of noninfringement on '776 Patent and '750 Patent GRANTED and Atmel's cross motion for summary judgment of infringement on '776 Patent DENIED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patentee filed a complaint against defendant corporation, charging defendant with patent infringement, and plaintiff filed a motion to amend its claim chart. Defendant filed a motion for summary judgment of noninfringement and plaintiff filed a cross motion for summary judgment of infringement.

**OVERVIEW:** Plaintiff patentee brought an action in the court against defendant corporation charging defendant with patent infringement. Plaintiff later filed a motion to amend its claim chart. Defendant filed a motion for summary judgment of noninfringement. The court denied plaintiff's motion to amend its claim chart, granted defendant's motion for summary judgment of noninfringement, and denied plaintiff's cross motion for summary judgment of infringement. Because no reasonable juror could have found that certain trim cells were memory cells based on the evidence adduced by the parties, and because plaintiff's claim chart did not claim infringement by trim cells, plaintiff was barred from asserting literal infringement with respect to those cells. The court held that the rulings in a hearing did not constitute discovery of new information for purposes of U.S. Dist. Ct., N. Dist. Cal., R. 16-9(c). The court could not conclude that the grounds for plaintiff's proposed amendment were excusable within the meaning of Rule 16-9(c). The court could not discern a genuine dispute of fact as to whether a transistor was a select device, and therefore as to whether the trim cell was a memory cell.

**OUTCOME:** The court denied plaintiff patentee's motion to amend its claim chart, granted defendant corporation's motion for summary judgment of noninfringement, and denied plaintiff's cross motion for summary judgment of infringement because no reasonable juror could have found that certain trim cells were memory cells based on the evidence adduced by the parties, and there was no genuine dispute of fact as to whether a trim cell was a memory cell.

**LexisNexis(R) Headnotes**

*Criminal Law & Procedure > Sentencing > Corrections, Modifications & Reductions > Eligibility, Circumstances & Factors*
*Governments > Courts > Rule Application & Interpretation*
*Patent Law > Infringement Actions > Claim Interpretation > General Overview*
[HN1] U.S. Dist. Ct., N. Dist. Cal., R. 16-9(c) governs the amendment of claim charts and allows such amendments only in three narrow circumstances: (1) by stipula-

tion of the parties; or upon a showing to the court of (2) excusable subsequent discovery of new information or (3) clearly excusable neglect.

***Governments > Courts > Rule Application & Interpretation***
***Patent Law > Claims & Specifications > Claim Language > General Overview***
[HN2] The patent local rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed. U.S. Dist. Ct., N. Dist. Cal., R. 16-9(c) advances this purpose by making it difficult subsequently to revise claim charts through eleventh hour discovery of facts.

***Patent Law > Infringement Actions > Claim Interpretation > General Overview***
[HN3] "Memory cell" means a cell with one select device and one memory device.

***Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview***
***Civil Procedure > Summary Judgment > Standards > Genuine Disputes***
***Evidence > Procedural Considerations > Burdens of Proof > Preponderance of Evidence***
[HN4] As the party charging infringement, a plaintiff bears the burden of proof at trial by a preponderance of evidence. On summary judgment, therefore, a defendant need only demonstrate that there is an absence of evidence to support the plaintiff's case. The burden then shifts to the plaintiff to go beyond the pleadings using affidavits, depositions, answers to interrogatories, or other means to demonstrate "specific facts showing that there is a genuine issue for trial. *Fed. R. Civ. P. 56(e)*. Mere allegations or denials are not sufficient. Where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

***Civil Procedure > Pleading & Practice > Motion Practice > Content & Form***
***Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview***
***Evidence > Testimony > Experts > General Overview***
[HN5] Although an expert witness testifying at trial need not disclose the facts or data relied upon to reach his opinion, *Fed. R. Evid. 705*, the same is not true on a motion for summary judgment. Expert declarations in support of such a motion must set forth the factual basis for the opinion even though the underlying factual details and reasoning upon which it is based are not.

***Patent Law > Infringement Actions > Claim Interpretation > Scope***
***Patent Law > Infringement Actions > Defenses > Estoppel & Laches > General Overview***
***Patent Law > Infringement Actions > Infringing Acts > Repair & Replacement***
[HN6] The purpose of a claim construction is to define the scope of a patent infringement action. If a plaintiff's theory of infringement ceases to be viable after the construction ruling, the plaintiff is not entitled to replace it with a new one three years into the litigation.

**COUNSEL:** For ATMEL CORPORATION, Plaintiff: Robert T. Haslam, Michael K. Plimack, Keith R. Weed, Alyssa T. Koo, Heller Ehrman White & McAuliffe, Palo Alto, CA.

For INFORMATION STORAGE DEVICES, INC., defendant: Charlene M. Morrow, William A. Fenwick, Virginia K. DeMarchi, Fenwick & West LLP, Palo Alto, CA.

ALEXANDER L. BRAINERD, Special Master, Pro se, Palo Alto, CA.

**JUDGES:** FERN M. SMITH, United States District Judge.

**OPINION BY:** FERN M. SMITH

**OPINION**

ORDER DENYING MOTION TO AMEND CLAIM CHART; GRANTING ISD'S MOTION FOR SUMMARY JUDGMENT; DENYING ATMEL'S CROSS MOTION FOR SUMMARY JUDGMENT

**INTRODUCTION**

The parties' cross motions for summary judgment turn on two principal issues: (1) whether Atmel should be allowed to amend its Claim Chart to assert the doctrine of equivalents; and (2) whether the "trim cells" in the accused devices constitute "memory cells" within the meaning of the '776 Patent. The Court answers the first question in the negative. In addition, because no [*2] reasonable juror could find that trim cells are memory cells based on the evidence adduced by the parties, and because Atmel's claim chart does not claim infringement by trim cells, Atmel is barred from asserting literal infringement with respect to these cells. The Court therefore GRANTS summary judgment in favor of ISD.

## BACKGROUND

On June 15, 1995, plaintiff Atmel Corporation ("Atmel") filed a complaint charging defendant Information Storage Devices ("ISD") with infringement, *inter alia*, of U.S. Patent Nos. *4,822,750*, *4,701,776*, and *4,511,811* (the "*'750 Patent*," the "*'776 Patent*," and the "*'811 Patent*," respectively). After an exceptionally protracted and contentious period of discovery, the Court held *Markman* hearings and construed the three patents in late February 1998. On April 14, 1998, the Court granted ISD's motion for summary judgment on the *'811 Patent* on grounds of indefiniteness.

In June 1998, ISD moved for summary judgment of noninfringement on the '776 and '750 *Patents*, and Atmel responded with a cross motion for summary judgment of infringement on the '766 Patent. ISD claims that its devices do not infringe the *'776 Patent* because the memory cells in [*3] the "main" memory array are not "completely separated" by field stop regions, as required by the Court's claim construction order. Atmel concedes that the memory cells in the "main" array do not literally infringe. Instead, it claims that (1) a row of "trim cells" located next to the "main" memory array are literally infringing, and in the alternative, that (2) the "memory cells" in the "main" array infringe under the doctrine of equivalents. ISD replies that Atmel had never before asserted infringement by the trim cells and that such a theory is anyhow barred because it was not specifically raised in Atmel's claim chart, filed by Court order in September 1996.

In response, Atmel moved during briefing on summary judgment to amend its claim chart. The motion only seeks to assert the doctrine of equivalents against the memory cells in the "main" memory array. It does not seek to amend the claim chart to include the trim cells. Instead, Atmel relies on the fact that trim cells constitute memory cells, and thus that its claim chart requires no specific mention of them other than as memory cells.

Because the Court will deny Atmel's motion to amend its claim chart, it does not reach the [*4] parties' substantive arguments regarding infringement under the doctrine of equivalents. The remaining issue for summary judgment is therefore whether the "trim cells" literally infringe. Because Atmel will not be allowed to amend its claim chart, however, it can proceed against the trim cells only if memory cells imply trim cells. As a prelude to the question of literal infringement, the Court must therefore consider the factual question of whether trim cells are memory cells. Because this question can only be answered in the negative, Atmel cannot proceed to claim literal infringement by the trim cells and the Court is required to enter summary judgment for ISD.

## DISCUSSION

### I. Atmel's Motion to Amend its Claim Chart to Assert the Doctrine of Equivalents.

#### A. Overview

On January 19, 1996, the Court ordered Atmel to submit a claim chart showing how the accused devices infringe the *'776 Patent*. The Order required that Atmel identify "whether . . . [each] claim is infringed literally and/or under the doctrine of equivalence." Order at 3. Atmel served its claim chart on September 16, 1996. Although the chart asserts literal and equivalent infringement for a number [*5] of claim elements, it asserts only literal infringement of the claimed "field stop regions," the "first doped region," and "second doped region."

After *Markman* hearings on January 12 and 13, 1998, the Court construed the terms "field stop regions," "first doped region," and "second doped region" in a manner unfavorable to Atmel. Atmel now seeks to amend its claim chart to assert infringement of these claim elements under the doctrine of equivalents.

#### B. Discussion

##### 1. Legal Standard.

[HN1] Local Rule 16-9(c) governs the amendment of claim charts and allows such amendments only in three narrow circumstances: (1) by stipulation of the parties; or upon a showing to the Court of (2) "excusable subsequent discovery of new information" or (3) "clearly excusable neglect." Only the second ground is in dispute here.

##### 2. Analysis

Atmel argues that the Court's February 1998 claim construction order constitutes "the discovery of new information" within the meaning of L.R. 16-9(c). As of the date of this Order, there have not been any published judicial opinions interpreting this rule. The Court nonetheless holds that *Markman* rulings do not constitute "discovery of new information" [*6] for purposes of Rule 16-9(c). The decision of a court is not "discovered" but is rather handed down. It is furthermore doubtful that the term "new information" was intended to embrace the interpretation of preexisting legal documents. Instead, the term more plausibly refers to newfound facts or data.

If Atmel were correct, claim construction rulings would routinely precipitate a motion to amend claim

charts. Moreover, because the Federal Circuit reviews a district court's claim construction *de novo*, parties would frequently be afforded a second opportunity at claim chart amendment after a full blown trial and reversal on appeal.[1] As a consequence, infringement cases would fall prey to a vexatious shuffling of positions--a kind of legal musical chairs serving no purpose other than to entertain highly paid lawyers and to thwart the very intention behind the patent local rules.

> 1 According to some statistics, the Federal Circuit reversed in whole or in part 38% of all patent claim constructions originating from the Board of Patent Appeals and Interferences, the district courts, and the Court of Federal Claims. *Cybor Corp. v. FAS Technologies, Inc., 138 F.3d 1448, 1476 n.4 (Fed. Cir. 1998)* (Rader, J. concurring in the judgment). It reversed in whole or in part 53% of all cases (not just claim constructions) appealed from district courts alone. *Id. at 1476*. This led Judge Rader to conclude that *de novo* review by the Federal Circuit "means that the trial court's early claim interpretation provides no early certainty at all, but only opens up the bidding . . . . To get a certain claim interpretation, parties must go past the district court's *Markman I* proceeding, past the entirety of discovery, past the entire trial on the merits, past post trial motions, past briefing and argument to the Federal Circuit--indeed past every step in the entire course of federal litigation, except Supreme Court review." *Id.*

[*7] The patent local rules were adopted by this district in order to give claim charts more "bite." [HN2] The rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed. Rule 16-9(c) advances this purpose by making it difficult subsequently to revise claim charts through eleventh hour "discovery" of facts. Unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the "shifting sands" approach to claim construction.

Atmel replies that frugality in the amendment of claim charts would only encourage litigants indiscriminately to canvass their charts with every conceivable theory of infringement, no matter how plausible. This, in turn, would undermine the usefulness of the charts. Although Atmel's prediction may be accurate, the obverse situation is equally problematic: namely, where parties are not bound by their claim charts until after a *Markman* ruling. In either case, the usefulness of claim charts is somewhat eroded. In view of the intent behind the patent local rules to ensure that litigants put [*8] all their cards on the table up front, the Court finds that the problem Atmel warns of is the lesser of the two evils.

Atmel's final argument is that ISD would not suffer any prejudice by the proposed revision. That is wrong. This action has plodded on for three years, due in large part to continuances initiated by Atmel. After this history, Atmel's cry of "no prejudice" is disingenuous at best. Its motion was filed after briefing on ISD's motion for summary judgment had already begun--that is to say, more than six months after the Court construed the *'776 Patent* claims and more than three years since the original complaint was filed.

Atmel had asserted alternative theories of infringement (that is, literal infringement and infringement under the doctrine of equivalents) with respect to other claims in the *'776 Patent*. It would have required little additional effort to add an equivalence theory for the claims Atmel now seeks to amend. Had Atmel focused more of its energy toward the substantive matters in this case and less toward procedural delay, this issue might never have arisen. Atmel had moreover repeatedly emphasized to ISD that its claim charts were definitive and spoke for [*9] themselves.[2]

> 2 *See* Letter dated 10/1/96 from Stanley Young to Charlene Morrow, attached to the Declaration of Charlene Morrow in Support of ISD's Opposition to Motion to Amend Claim Chart ("Morrow Decl.") as Exhibit 5 ("Where we assert the doctrine of equivalents as an alternative argument, we explicitly so state in our claim chart."); Letter dated January 3, 1997 from Richard H. Abramson to Charlene Morrow, attached to Morrow Decl. as Exhibit 6 ("You have professed to be confused as to whether and how Atmel is claiming infringement . . . under the Doctrine of Equivalents. The claim charts previously produced to you, however, identify certain claim elements as being infringed either literally or, in the alternative, under the Doctrine of Equivalents. As a consequence, we do not understand . . . your purported confusion.").

Taking into consideration Atmel's conduct in this case, the Court cannot conclude that the grounds for the proposed amendment are "excusable" within the meaning of L.R. 16-9(c). Atmel's [*10] motion to amend its claim chart to assert the doctrine of equivalents is accordingly DENIED.

**II. Literal Infringement of *'776 Patent* by Chip-Corder Trim Cells**

**A. Overview**

Because Atmel will not be allowed to amend its claim chart to assert infringement under an equivalence theory, the sole remaining issue is whether the accused device literally infringes the *'776 Patent*. Atmel concedes that memory cells in the "main" memory array of the accused device do not literally infringe. Nonetheless, it argues that a row of cells at one end of the memory array, known as "trim cells," do.

ISD responds that Atmel is barred from raising a novel theory of infringement at this stage of the litigation. Atmel's claim charts did not accuse the trim cells but rather only the memory cells that form the "main" memory array of the device. Because Atmel's claim chart cannot now be amended to include the trim cells, and because Atmel has conceded noninfringement by the memory cells in the "main" memory array, ISD moves for summary judgment on the ground that there is no issue for trial.

Atmel replies that the trim cells are merely a species of the genus "memory cell," and thus that they [*11] were impliedly accused in its claim chart. Because the meaning of "memory cell" includes trim cells, Atmel argues, ISD knew or should have known that Atmel was asserting infringement by trim cells.

The issue of whether ISD's accused device literally infringes the *'776 Patent* thus presupposes a threshold question: whether a trim cell falls within the patent definition of "memory cell." If it does not, Atmel's sole surviving infringement argument would be barred, requiring summary judgment in ISD's favor. If it does, Atmel may proceed to accuse the trim cells even though it failed specifically to mention them in its claim chart. Only in this instance will the Court need to reach the substantive issue of infringement.

**B. Do "Trim Cells" Constitute "Memory Cells" Used in a Memory Array?**

**1. Definition of a Memory Cell**

The *'776 Patent* claims an "erasable MOS memory device for use in a memory array having a plurality of memory cells...." *'776 Patent* col. 12:43-45. In order to fall within the scope of the patent, the trim cells must therefore be (1) memory cells that (2) are used in a memory array having a plurality of such cells.

After *Markman* hearings, the Court construed [*12] the term [HN3] "memory cell" to mean a cell with one select device and one memory device. *Atmel Corp. v. Information Storage Devices, Inc., 997 F. Supp. 1210, 1218 (N.D. Cal. 1998)*. In the patent specification, a select device is described as an MOS transistor and a memory device is described as a floating gate transistor. See *'776 Patent* col. 2:64-68.

Like a memory cell, a trim cell contains one floating gate transistor, which the parties agree functions as the trim cell's memory device. Unlike a memory cell, however, a trim cell contains not one but three MOS transistors. The parties agree that two of the three MOS transistors do not function as select devices. [3] The crux of the dispute is whether the third MOS transistor (the "third transistor") is a select device. If it is, the trim cell would meet the definition of a memory cell as a cell with one memory device and one select device.

  3   Instead, these two transistors are used electronically to isolate the trim cell's memory device from the "main" memory array, thus enabling information to be read from the trim cell at a different voltage from the "main" array. Supplemental Declaration of Richard T. Simko in Support of ISD's Motion for Summary Judgment ("Supp. Simko Decl.") P 49; *see also* Supplemental Declaration of Michael J. Callahan, Jr. in Support of Atmel's Cross Motion for Summary Judgment ("Supp. Callahan Decl.") PP 17-18 (no disagreement).

[*13] **2. Function of a Select Device**

To program a memory cell, the select device is "turned on" and a positive voltage is applied to the programming gate of the cell's memory device. *'776 Patent* col. 3:36-39. Negative charge carriers originating in the source region are attracted into the floating gate, where they can be stored indefinitely. *Id.* col. 3:40-42. Erasing the memory cell consists of expelling the charge carriers from the floating gate into the drain region. This is accomplished by again "turning on" the select gate, but this time by applying positive voltage to the drain of the memory device. *Id.* col. 7:11-12. The positive charge attracts the electrons from out of the floating gate and into the drain region. Programming or erasing the memory cell therefore requires a select device that can be switched on (and by implication, switched off) to "select" the memory device.

This interpretation is corroborated by extrinsic evidence. ISD's expert Richard Simko declared that the function of a select device is to "select and deselect specific rows of the memory array for either programming, erasing, or reading." Supplemental Declaration of Richard T. Simko in Support [*14] of ISD's Motion for Summary Judgment ("Supp. Simko Decl.") P 49. By switching on or off, a select device activates the cell's memory device, allowing each cell in a selected row to be programmed or erased. *Id.; see* Declaration of Dr. Else Kooi in Support of ISD's Motion for Summary Judgment ("Kooi Decl.") P 13 (when select device in

EEPROM memory cell is on, "that particular memory cell has been selected.").

Accordingly, the Court construes the select device as a device that can be turned on or off to select a memory device.

### 3. The Third Transistor in the Trim Cell

#### a. ISD's Challenge

ISD argues that the third transistor in the trim cell is not a select device because it doesn't perform the function of a select device as that is described in the *'776 Patent* specification--namely, to turn on and off, enabling the cell's memory device to be programmed, read, or erased. *See id.* col. 3:36-39, 7:11-12. If the third transistor is not a select device, ISD argues, the trim cell cannot fall within the Court's definition of a memory cell as a cell with a "single select and memory device." *Atmel, 997 F. Supp. at 1218.* In support of this position, ISD's expert Richard [*15] Simko made the following offers of proof:

1. Unlike the select device in a memory cell, the third transistor in the trim cell does not switch on and off. It "cannot be turned on and off while the array is being used" and "cannot be turned on or off individually from the other third transistors in the other trim cells." Supp. Simko Decl. P 49. Instead, the third transistor is "always on," [4] enabling information to be read continuously from the trim cell's memory device. [5] *Id.* By contrast, information from memory cells is read only when the memory cell is selected. *Id.* P 39.

    4  Reply by ISD in Support of Cross-Motion for Summary Judgment ("ISD Reply") at 4; *see* Supp. Simko Decl. P 49 ("The third transistor, which is on, permits the floating gate transistor to read out to the local column which connects to the differential amplifiers.").

    5  Mr. Simko explains: "Information in the trim cells is continuously read by the differential amplifiers. . . . The continuous reading of the trim bits ensures that normal manufacturing and temperature variations do not adversely affect the normal operation of the Accused Devices. In particular, the continuous adjustment of reference values, such as the frequency of sampling of analog voltage data and specific voltage and current reference levels throughout the chip, ensures that the Accused Devices during normal operation mode can maintain a similar quality of results without having to adjust the electrical characteristics of the memory cells within the memory array." Supp. Simko Decl. P 39.

[*16] 2. Further unlike a select device, the third transistor does not select or de-select individual trim cells or groups of trim cells for programming or erasing. *Id.* P 49. The select gate in a memory cell selects and deselects specific rows of the memory array for programming or erasing. *Id.* By contrast, trim cells cannot be "selected"; rather, all trim cells must be programmed or erased all at once. This can take place only during a special mode of operation, initiated by the manufacturer, that requires special hardware and a unique electrical signaling pattern. *Id.* P 40. The third transistor therefore does not select trim cells for programming or erasing in the way a select device selects memory cells.

In sum, ISD contends that the third transistor does not perform an essential function of a select device: that of turning off and on--selecting and deselecting--for programming, reading, and erasing. *See '776 Patent* col. 3:36-39, 7:11-12; Kooi Decl. P 13; Supp. Simko Decl. P 49.

[HN4] As the party charging infringement, Atmel bears the burden of proof at trial by a preponderance of evidence. *Symbol Technologies, Inc. v. Opticon, Inc., 935 F.2d 1569, 1574 (Fed.* [*17] *Cir. 1991).* On summary judgment, therefore, ISD need only demonstrate that "there is an absence of evidence to support" Atmel's case. *See Celotex Corp. v. Catrett, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).* The burden then shifts to Atmel to "go beyond the pleadings"--using affidavits, depositions, answers to interrogatories, or other means--to demonstrate "specific facts showing that there is a genuine issue for trial." *Id. at 324; Fed. R. Civ. P. 56(e).* Mere allegations or denials are not sufficient. *Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994).* "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).*

ISD has discharged its initial burden on summary judgment. *See Celotex, 477 U.S. at 325.* The ball is now in Atmel's court to adduce rebuttal evidence demonstrating the need for a trial.

#### b. Atmel's Burden

To meet the contention that a trim cell is not a memory cell, Atmel submits the Supplemental Declaration [*18] of Michael J. Callahan, Jr. in Support of Atmel's Cross Motion for Summary Judgment ("Supp. Callahan Decl."). Mr. Callahan declares that the third transistor does in fact function as a select device because it "operates to connect the memory . . . [device] to the appropriate circuitry and potentials in order to program, erase, or read the floating gate device." Supp. Callahan Decl. P 8. The third transistor thus acts as a kind of bridge which

Case 5:07-cv-01998-RMW    Document 44-7    Filed 03/03/2008    Page 12 of 19

Page 7
1998 U.S. Dist. LEXIS 17564, *

forges a connection between the memory device and the "appropriate circuitry" in order for information to be read from the trim cell.

Mr. Callahan's statement, however, is entirely consistent with ISD's position that the third transistor is not an on-off switch. The simple observation that the third transistor "operates to connect" the memory device with the reading circuitry does not in any way suggest that the third transistor turns on and off to select the memory device. Mr. Callahan furthermore does not contest the fact that the select device described in the '776 Patent must turn on and off.

In addition, Atmel does not dispute that information is read from trim cells continuously. *See* Supp. Simko Decl. PP 39, 49 (because trim cell [*19] must be read continuously at low voltage while "main" memory array operates at high voltage, trim cell memory device must be uncoupled from "main" array); *see* Supp. Callahan Decl. P 18 ("trim cells may be . . . used (read) in a continuous manner."). Continuous reading would require the connection between the memory device and the "appropriate circuitry," as described by Mr. Callahan, not to be severed and instead to remain constant. Unlike a drawbridge that rises and falls, or a switch that turns on and off, the third transistor would therefore need to stay "always on" in order to ensure the uninterrupted flow of information necessary for continuous reading. *See* ISD Reply at 4; Supp. Simko Decl. P 49. Even accepting Mr. Callahan's statement as true, therefore, Atmel has effectively conceded that the third transistor does not perform the essential function of a select device--that of switching on and off.

Atmel furthermore does not contest ISD's claim that trim cells can only be programmed and erased all at once. Such wholesale operation would appear to preclude individual cells or groups of cells within the trim row from being "selected" for programming or erasing. Atmel has [*20] not explained to the satisfaction of the Court how the third transistor can effect any meaningful "selection" of trim cells under these technical constraints.

The remainder of Mr. Callahan's declaration on this topic fails to generate a material dispute of fact. For example, after quoting language from the '776 Patent describing the physical characteristics and the function of a select device, Mr. Callahan merely declares in a sentence that the third transistor "meets this description in its entirety." Supp. Callahan Decl. PP 11, 12. This is nothing more than a conclusory allegation.

[HN5] Although an expert witness testifying at trial need not disclose the facts or data relied upon to reach his opinion, *see F.R.E. 705*, the same is not true on a motion for summary judgment. Expert declarations in support of such a motion must set forth "the factual basis for the opinion" even though "the underlying factual details and reasoning upon which it is based are not." *Bulthuis v. Rexall Corp., 789 F.2d 1315, 1318 (9th Cir. 1985)*; *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago, 877 F.2d 1333, 1339 (7th Cir. 1989)* (requiring "specific facts").

Mr. Callahan has provided not [*21] a single factual ground to support his inference that the third transistor is a select device within the meaning of the '776 Patent. Rather than proving this identity to the satisfaction of the Court, he has simply presupposed it. In any event, the question of whether the third transistor is physically equivalent to a select device is irrelevant. ISD's argument is not that the third transistor is physically dissimilar to a select device but rather that it does not function as one.

A further point raised by Mr. Callahan is that ISD's expert Richard Simko himself referred to the third transistor as a "select gate." *See* Supp. Callahan Decl. P 13. The Court is unwilling to use an isolated example of what may simply be an inadvertent remark as a reason to grant or deny summary judgment. Mr. Simko has provided clear and convincing testimony regarding why the third transistor is not a select device.

Finally, Mr. Callahan appends to his declaration a circuit schematic diagram on which ISD's engineers labeled the third transistor "TRMSG"--an abbreviation which denotes "select gate" to those skilled in the art. *See* Supp. Callahan Decl. P 14. The issue, however, is not what ISD's engineers [*22] subjectively thought but rather what function the third transistors actually perform. Atmel and ISD agree that two of the trim cell's MOS transistors are not select devices because they do not operate like such devices. The implication is that not every MOS transistor is a select device--only those that perform the function associated with that device. Mr. Callahan's declaration does not address whether the third transistor functions as a switch that selects trim cells for programming, erasing, or reading. Accordingly, it does not raise a triable issue.

Accepting Atmel's factual allegations as true and resolving all disputes in its favor, the Court cannot discern a genuine dispute of fact as to whether the third transistor is a select device, and therefore as to whether the trim cell is a memory cell. For these reasons, summary judgment for ISD is GRANTED.

Although summary judgment is an extreme measure, the equities in this case further justify the result. Faced with an adverse claim construction ruling, Atmel has attempted late in the day to redefine the contours of this case by inventing a new theory of infringement.

[HN6] The purpose of a claim construction is to define the scope [*23] of a patent infringement action. If a

plaintiff's theory of infringement ceases to be viable after the construction ruling, plaintiff is not entitled to replace it with a new one three years into the litigation. To do so would not only undermine the distilling function of *Markman* rulings, it would also result in enormous prejudice and expense to the other party. Here, ISD would be forced to take additional discovery relating to the trim cells and prepare for trial on a wholly new claim of infringement. The prejudice to ISD is substantial.

### III. '750 Patent

Atmel does not oppose ISD's motion for summary judgment on the *'750 Patent. See* Atmel's Statement of Nonopposition to ISD's Motion for Summary Judgment Re: Noninfringement Re: *'750 Patent*, attached to the Declaration of Charlene M. Morrow in Support of ISD's Opposition and Response to Atmel's Cross Motion for Summary Judgment as Exhibit 28. For good cause shown, the Court finds that the accused devices do not infringe the *'750 Patent*. ISD's motion is therefore GRANTED.

### CONCLUSION

For the foregoing reasons, the Court (1) DENIES Atmel's motion to amend its claim chart; (2) GRANTS ISD's motion for summary [*24] judgment of noninfringement on the *'776 Patent* and the *'750 Patent*; and (3) DENIES Atmel's cross motion for summary judgment of infringement on the *'776 Patent*.

SO ORDERED.

Dated: November 4, 1998

FERN M. SMITH

United States District Judge

# EXHIBIT E

EXHIBIT E

LEXSEE 2004 U.S.DIST. LEXIS 10934


Caution
As of: Feb 26, 2008

**IXYS CORPORATION, Plaintiff, v. ADVANCED POWER TECHNOLOGY, INC., Defendant. AND RELATED COUNTERCLAIMS.**

No. C 02-03942 MHP

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

*2004 U.S. Dist. LEXIS 10934*

June 15, 2004, Decided
June 16, 2004, Filed

**SUBSEQUENT HISTORY:** Partial summary judgment denied by *Ixys Corp. v. Advanced Power Tech., Inc., 321 F. Supp. 2d 1156, 2004 U.S. Dist. LEXIS 10945 (N.D. Cal., June 15, 2004)*

**PRIOR HISTORY:** *IXYS Corp. v. Advanced Power Tech., Inc., 2004 U.S. Dist. LEXIS 4200 (N.D. Cal., Mar. 18, 2004)*

**DISPOSITION:** Defendant's motion to amend granted in part and denied in part. Plaintiff's motion to preclude granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant corporation filed a motion to amend its final invalidity contentions in connection with plaintiff patentee's action for infringement of patents on an improved design for power MOSFET devices. The patentee filed a motion to preclude the corporation from introducing or employing untimely produced documents.

**OVERVIEW:** The corporation sought to add materials produced by its expert and corresponding claim charts. The court denied the corporation's motion to amend its final invalidity contentions as to 90 pages that the patentee received only six days before its expert's rebuttal report was due. The corporation did not provide any mask layer data as accompaniment to its final invalidity contentions and stated that it had produced all technical information on which its contentions of non-infringement were based. Later that day, the corporation filed a motion for summary judgment of non-infringement, and the next day it provided mask layer data for a large number of the corporation's devices. The court held that U.S. Dist. Ct., N.D. Cal., Patent R. 3-4(b) required the corporation to produce more than the "identity" of the prior art upon which it sought to rely, and if the corporation believed that a mask layer photograph was relevant, then Rule 3-4(b) required the corporation to provide that document. The corporation's decision to deliver the documents upon which its motion for summary judgment relied to the patentee only after it had already filed that motion was unconscionable.

**OUTCOME:** The court denied the corporation's motion to amend it final invalidity contention with respect to 90 pages produced six days before an expert rebuttal was due, but granted the motion in all other respects. The court precluded the corporation from introducing into evidence any documents that referenced any of the corporation's products that the patentee had already accused of infringing its patents.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
[HN1] Prejudice is the touchstone of the inquiry when considering a motion for leave to amend a complaint.

Case 5:07-cv-01998-RMW    Document 44-7    Filed 03/03/2008    Page 16 of 19

Page 2
2004 U.S. Dist. LEXIS 10934, *

*Patent Law > Anticipation & Novelty > Elements*
*Patent Law > Infringement Actions > Defenses > Patent Invalidity > General Overview*
[HN2] U.S. Dist. Ct., N.D. Cal., Patent R. 3-3(a) states that a party's preliminary invalidity contentions (and, by extension, its final invalidity contentions) must reveal the identity of each item of prior art that allegedly anticipates each asserted claim.

*Patent Law > Infringement Actions > Defenses > Patent Invalidity > General Overview*
[HN3] The preliminary invalidity contentions must contain a chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found. U.S. Dist. Ct., N.D. Cal., Patent R. 3-3(c).

*Patent Law > Inequitable Conduct > General Overview*
*Patent Law > Infringement Actions > Defenses > Patent Invalidity > General Overview*
[HN4] U.S. Dist. Ct., N.D. Cal., Patent R. 3-4(b) requires the party asserting invalidity to produce a copy of each item of prior art identified pursuant to U.S. Dist. Ct., N.D. Cal., Patent R. 3-3(a) which does not appear in the file history of the patent(s) at issue.

**COUNSEL:** [*1] For IXYS Corporation, Plaintiff: Robert Paul Feldman, Wilson Sonsini Goodrick & Rosati, Palo Alto, CA. Christopher D. Catalano, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA. Michael Barclay, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA.

For Advanced Power Technology, Inc., Defendant: Vickie L. Feeman, Orrick Herrington & Sutcliffe LLP, Menlo Park, CA. Alexander Charles Johnson, Marger Johnson & McCollom, P.C., Portland, OR. James Edward Harris, Marger Johnson & McCollom, P.C., Portland, OR. William Sloan Coats, III, Orrick Herrington & Sutcliffe, Menlo Park, CA. Bas de Blank, Orrick, Herrington & Sutcliffe LLP, Menlo Park, CA. Robert Paul Feldman, Wilson Sonsini Goodrick & Rosati, Palo Alto, CA. Tarek J. Helou, Orrick Herrington & Sutcliffe LLP, Menlo Park, CA.

**JUDGES:** MARILYN HALL PATEL, Chief Judge, United States District Judge.

**OPINION BY:** MARILYN HALL PATEL

**OPINION**

**MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION TO AMEND FINAL INVALIDITY CONTENTIONS AND PLAINTIFF'S MOTION TO PRECLUDE UNTIMELY PRODUCED EVIDENCE**

Plaintiff IXYS Corporation ("IXYS") filed this action against defendant Advanced Power Technology, Inc. ("APT"), alleging infringement of two U.S. patents, numbered 5,486,715 [*2] (the "'715 patent") and 5,801,419 (the "'419 patent"), that it holds on an improved design for power MOSFET devices. Now before the court are APT's motion to amend its final invalidity contentions and IXYS's motion to preclude APT from introducing or employing untimely produced documents. After having considered the parties' arguments and submissions, and for the reasons set forth below, the court rules as follows.

I. APT's Motion to Amend Final Invalidity Contentions

APT has come before this court seeking leave to amend its final invalidity contentions to add materials produced by its expert, John Neilson (the "GE/Harris documents") and corresponding claim charts, as well as claim charts organizing the technical references relied upon by APT's expert, Dr. Shenai, in his opening report. The court construed disputed claim terms in this case on January 22, 2004, and the deadline in this case for the filing of Final Invalidity Contentions was March 1, 2004. However, on March 8, 2004, at oral argument, the court notified the parties of a typographical error in the original claim construction order and announced that a correction would be forthcoming; the court's written order [*3] of March 18, 2004, contained this correction.

According to APT, sometime after the March 8, 2004, hearing Mr. Neilson became aware of the court's modification of its claim construction order and realized that certain documents in his possession had become relevant. On March 15, 2004, Mr. Neilson faxed nineteen pages of GE/Harris documents to APT's counsel; the documents were promptly forwarded to IXYS by facsimile the following day. Johnson Dec. P9. At some subsequent point Mr. Neilson forwarded another 90 pages of documents to APT's counsel. Id. P10. APT's attorney photocopied these documents and delivered copies of them to IXYS on March 31, 2004. Rebuttal expert reports in this case were due on April 6, 2004.

Under Patent Local Rule 3-6(b), APT has the right to amend its final invalidity contentions in light of the adjustment made to this court's claim construction. However, as in all cases of amendment, that right is subject to the court's (and APT's) countervailing duty to avoid prejudicing IXYS through eleventh-hour alterations. Cf. *Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048,*

Case 5:07-cv-01998-RMW   Document 44-7   Filed 03/03/2008   Page 17 of 19

Page 3
2004 U.S. Dist. LEXIS 10934, *

*1052 (9th Cir. 2003)* [HN1] ("Prejudice is the touchstone of the inquiry" when [*4] considering a motion for leave to amend a complaint.) IXYS's expert was able to incorporate the first nineteen pages of GE/Harris material (delivered March 16, 2004) into his rebuttal report. See Barclay Dec., Exh. 7, PP10-11. The same cannot be said for the remaining ninety pages, which IXYS received only six days before Dr. Blanchard's rebuttal report was due. See id. P5g. The court is further puzzled as to why APT only delivered to IXYS the claim charts accompanying Dr. Shenai's report on March 26, 2004, when that report was due on March 1, 2004. Nevertheless, there seems little to be gained from striking these claim charts while the underlying technical references remain part of the case.

Accordingly, APT's motion is DENIED with respect to the ninety pages of GE/Harris documents provided to IXYS on March 31, 2004, and GRANTED in all other respects.

II. IXYS's Motion to Preclude

On March 31, 2003, APT served its Preliminary Invalidity Contentions ("PIC") on IXYS as required under the set schedule. APT's PIC specifically referenced several of APT's devices, including the 208, 208x, and 526 as prior art devices, and APT delivered mask layers corresponding to those [*5] devices to IXYS on April 17, 2003. See Barclay Dec., Exh. 3. The PICs also mentioned APT's 108 device as relevant prior art, and a paper by Douglas Pike--presumably the inventor of the 108-- was attached as a reference to the PIC. See id. at 1, 4 ("If the 208x is found to not be a 'high frequency' device, claim 23 would be obvious based on APT's high-frequency 108 product.... The 108 product of Reference 9 actually uses an Al-on-polysilicon gate to operate at 10 MHz."). [1] APT did not produce any mask layer documents for the 108, or for its 206 and 207 devices, at this point.

   1 However, IXYS points out that this document almost surely does not refer to the 108, since APT claims to have invented that device only in 1991. Regardless, the resolution of this question is not necessary for the purposes of IXYS's motion, given the court's holding.

On March 1, 2004, pursuant to the schedule set several months earlier, APT served its Final Invalidity Contentions ("FIC") upon IXYS. This document again referred [*6] to the APT 108, as well as the APT 206 and 207, and provided the same Pike paper as a reference. De Blank Dec., Exh. L. Again, APT did not provide any mask layer data to IXYS as accompaniment to its FIC.

On March 29, 2004, APT's counsel stated in a letter to IXYS's attorney that "APT has already produced all of the technical information on which its contentions of non-infringement are based." [2] Barclay Dec., Exh. 15. Later that day, however, APT filed a motion for summary judgment of non-infringement that referenced the APT 108 via declarations by several of APT's experts and officers. See Def. Mot., at 20-22. The next day, APT provided to IXYS a compact disc Bates-numbered APT 024649 that contained mask layer data for a large number of APT devices, including the APT 108. On April 16, 2004, APT filed the aforementioned motion to amend its FIC. The amended documents made no further reference to the 108, 206 or 207 devices.

   2 APT's letter also stated that APT was in the process of "analyzing IXYS's infringement allegations" and planned to supplement its response to IXYS's interrogatory regarding APT's non-infringement contentions only after APT's expert reports were complete. Notwithstanding this guarantee, APT filed its motion for summary judgment of non-infringement the same day as it delivered this letter to IXYS. The court is simply stunned by the disingenuousness of APT's March 29, 2004, letter.

[*7] Patent Local Rule 3-3(a) [HN2] states that a party's PIC (and, by extension, its FIC) must reveal "the identity of each item of prior art that allegedly anticipates each asserted claim." In addition, [HN3] the PIC must contain "[a] chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found...." Patent L.R. 3-3(c). Finally, Patent Local Rule 3-4(b) [HN4] requires the party asserting invalidity to produce "[a] copy of each item of prior art identified pursuant to Patent L.R. 3-3(a) which does not appear in the file history of the patent(s) at issue." APT alleges that Rules 3-3(a) and 3-4(b) require only what they literally describe--disclosures of the "identity" and a "copy" of the prior art--not other "ancillary" documents such as the mask layer data provided on the 024649 compact disc. APT also alleges that it provided "representational" claim charts for the 108, 206, and 207 devices along with its FIC, while IXYS argues that the only claim charts provided for devices APT alleges as prior art are the 208 and 208x. See De Blank Dec., Exh. L.

APT's reading of the Patent Local Rules is untenable at best, and insultingly tendentious at worst. [*8] The Local Rules exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush. Rule 3-4(b) quite obviously requires APT to produce more than the "identity" of the

Case 5:07-cv-01998-RMW     Document 44-7     Filed 03/03/2008     Page 18 of 19

Page 4
2004 U.S. Dist. LEXIS 10934, *

prior art upon which it seeks to rely--if APT believes that a mask layer photograph or drawing is relevant to this action, then Rule 3-4(b) requires APT to serve upon IXYS a copy of that same document.[3]

> 3  Indeed, if APT's reading of the Local Rules were correct, its production of mask layers for the 208 devices would have been utterly unnecessary.

Moreover, IXYS's requests for production of documents targeted precisely these types of prior art documents. See Barclay Dec., Exh. 1, at 9-11. APT's decision to deliver the documents upon which its motion for summary judgment relies to IXYS only *after* it has already filed that motion is simply unconscionable; unlike the materials [*9] that APT received from Dr. Neilson (referenced above) there is every indication that APT has held these documents in its possession, ready for use, since the beginning of this litigation. Their deployment against APT at this late stage in the proceedings will obviously cause IXYS a great deal of needless prejudice. APT is hereby precluded from introducing into evidence any prior art documents produced on the compact disc bates numbered APT 024649, and the court strikes all references to those documents in APT's motion papers.

The documents produced on this compact disc that do not constitute prior art are a different matter. Patent Local Rule 3-4(a) requires that APT turn over to IXYS any and all documents describing the operation or structures of APT's accused devices, but does not mention other devices that have not been accused. Similarly, IXYS's requests for production of documents specifically referenced the accused devices, not APT's complete line of products. See Barclay Dec., Exh. 1, at 5-6. IXYS has accused the following APT devices of infringement: "(a) any and all Power MOS 7(R) products or Power MOS V(R) (Generation 5) products with dual-layer metallization manufactured, [*10] used, sold, or offered for sale by APT on or after August 15, 1996, and (b) any and all products manufactured, used, sold, or offered for sale by APT on or after August 15, 1996 that are designed in substantially the same way, or function in substantially the same way, as APT 5018BLL [a Power MOS 7 TM MOSFET]." Pl. Disclosure of Asserted Claims and Preliminary Infringement Contentions. By consequence, it is documents describing *those* devices that APT was obligated to produce; APT's failure to produce documents relating to products that IXYS has never accused is not in error. Accordingly, APT is hereby precluded from introducing into evidence any documents produced on the compact disc bates numbered APT 024649 that reference or describe any of the products IXYS has *already* accused of infringing its patents. APT's 546, 846, and 1046 devices are deemed representative of all APT devices that IXYS has heretofore accused of infringement.

IT IS SO ORDERED.

Dated: June 15, 2004

MARILYN HALL PATEL

Chief Judge

United States District Court

Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DISPLAYLINK CORPORATION, a Washington Corporation<br><br>Plaintiff,<br><br>vs.<br><br>MAGIC CONTROL TECHNOLOGY, CORPORATION, a Taiwanese Corporation;<br><br>Defendant. | Case No.: 5:07-CV-01998-RMW |
| AND RELATED COUNTERCLAIMS | |

**[PROPOSED] ORDER**

Having considered Magic Control Technology's Motion to Strike the Jones Declaration and Corresponding Portions of Displaylink Corporation's Responsive Brief and the papers submitted in support of such notice and motion, and good cause appearing:

IT IS HEREBY ORDERED that Magic Control Technology's Technology's Motion to Strike the Jones Declaration and Corresponding Portions of Displaylink Corporation's Responsive Brief is granted pursuant to Patent Local Rules 4-3 and 4-4.

So ORDERED and SIGNED this 4th day of April, 2008.

---

RONALD M. WHYTE
UNITED STATES DISTRICT JUDGE