1  **WANG, HARTMANN, GIBBS & CAULEY, P.L.C**.
   A Professional Law Corporation
2  Richard F. Cauley (SBN: 109194)
   Franklin E. Gibbs (SBN: 189015)
3  Erick P. Wolf (SBN: 224906)
   1301 Dove Street, Suite 1050
4  Newport Beach, CA  92660
   Telephone: (949) 833-8483
5  Facsimile:  (949) 833-2281
   rcauley@whglawfirm.com
6
   Attorneys for Defendant and Counterclaim
7  Plaintiff, Magic Control Technology Corporation

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11 DISPLAYLINK CORPORATION, a Washington  )   CASE NO.:  5:07-CV-01998-RMW
   corporation,                           )
12                                         )   **MAGIC CONTROL
                                          )   TECHNOLOGY'S REPLY TO
13           Plaintiff,                    )   DISPLAYLINK CORPORATION'S
                                          )   OPPOSITION TO MOTION TO
14       v.                                )   STRIKE**
                                          )
15 MAGIC CONTROL TECHNOLOGY               )
   CORPORATION, a Taiwanese corporation;  )   Hearing Date:  April 25, 2008
16                                         )   Time:   9:00 a.m.
           Defendant.                      )   Courtroom: 6
17                                         )
                                          )
18 AND RELATED COUNTERCLAIMS              )
                                          )
19

20 **I.     INTRODUCTION**

21     In its Opposition, DisplayLink <u>admits</u> that it failed to disclose its intent to rely on

22 substantial extrinsic evidence, as required by the Local Patent Rules:

23     - USB Monitor Control Class Specification (Jones Decl., Exhibit 9)[1];
       - IBM Personal Computer (Jones Decl., Exhibit 15); and
24     - IBM (Information Systems Division, Entry Systems Business) Press Release, August
         12, 1981 (Jones Decl., Exhibit 16).
25

26 ─────────────

27 [1] The "Jones Decl." is included in MCT's moving papers as Exhibit B to the Declaration of Erick
   P. Wolf.
28

                                              1
   **MAGIC CONTROL TECHNOLOGY'S REPLY TO DISPLAYLINK CORPORATION'S
                   OPPOSITION TO MOTION TO STRIKE
                      CASE NO.:  5:07-CV-01998-RMW**

- U.S. Patent Application No. 2004/0021615 (Jones Decl., Exhibit 11);
- U.S. Patent Application No. 2004/0017333 (Jones Decl., Exhibit 12);
- U.S. Patent Application No. 2003/0120849 (Jones Decl., Exhibit 13); and
- U.S. Patent Application No. 2002/0135584 (Jones Decl., Exhibit 14).
- http://www-03.ibm.com/ibm/history/exhibits/pc25/pc25_birth.html (Jones Decl. at ¶ 6);
- http://www-03.ibm.com/ibm/history/exhibits/pc25/pc25_PH06.html (Jones Decl. at ¶ 10); and
- http://www.usb.org/developers/docs/ (Jones Decl. at ¶ 17).

DisplayLink's expert witness, Dr. Jones also admits that he relies on <u>all</u> of this improper evidence in forming his opinion on the scope of the claims at issue:

> <u>Based on my review of the above-referenced materials</u> [including Exhibits 9 and 11-16] and my knowledge as a person of ordinary skill in the art, I offer my opinion as to the proper scope of claims 1, 2, and 19 of the '788 Patent, which are stated herein and reflected in the accompanying Markman Brief.

Jones Decl. at ¶ 4 (emphasis added).

DisplayLink also failed to disclose the extensive substantial impact of Dr. Jones' 27-page Declaration. DisplayLink relied on that Declaration for the construction of <u>every</u> term at issue – citing to it over <u>100</u> times in the Responsive Brief for claim interpretation. Hence, DisplayLink's contention that it "does not rely heavily on extrinsic evidence by Dr. Jones" is disingenuous. Put simply, the Jones Declaration is "testimony on claim construction," rather than "testimony on technology."[2] DisplayLink has stepped over the line separating "testimony of one skilled in the art" from "testimony on claim scope" and in doing so, denied MCT of its right to conduct discovery prior to the <u>Markman</u> briefing. The Jones Declaration, relying on improperly disclosed evidence, should be stricken and DisplayLink should be prohibited from relying on any portion of the Declaration to support its proposed constructions.

---

[2] Unlike DisplayLink, MCT stuck to its representations in the Joint Claim Construction Chart and only relied on the testimony of expert Dr. Paul Min in its Claim Construction Brief in connection with the terms "USB" and "VGA."

## II. DISCUSSION

### A. THE UNDISPUTEDLY UNDISCLOSED EXHIBITS SHOULD BE STRICKEN

As discussed above, it is undisputed that Exhibits 6 and 9-17 were not disclosed under the Local Patent Rules. As discussed further below, Displaylink's various excuses cannot change that. Therefore, all of those exhibits and references to those exhibits should be stricken from the record and disregarded.

### B. CONTRARY TO DISPLAYLINK'S REPRESENTATIONS, THE BACKGROUND SECTION IS PROFERRED AS IMPERMISSIBLE OPINION TESTIMONY

The simple explanation for DisplayLink's heavy reliance on the Jones Declaration is that it failed to "crystallize" its theory of claim construction prior to the close of Markman discovery. Therefore, DisplayLink attempts to use Dr. Jones and the extrinsic evidence to create support for its Responsive Brief. DisplayLink's contention that Dr. Jones (and DisplayLink) only rely on the aforementioned exhibits for background purposes is without merit. As MCT will show below, when combined with these exhibits, Dr. Jones' testimony creates an impermissible foundation for each and every one of DisplayLink's proposed claim constructions.

In his background section, Dr. Jones specifically addresses DisplayLink's VGA and USB arguments over the course of thirteen (13) paragraphs. Dr. Jones even goes so far as to hint at DisplayLink's prior art argument relating to so-called USB-to-VGA converters. Therefore, DisplayLink's argument that the background section (¶¶ 5-22) of the Jones Declaration "merely preview[s] the technology tutorial…and do[es] not constitute 'evidence' relied on by DisplayLink to support its claims construction positions or oppose positions taken by MCT" is without merit. Opposition Brief at 5:4-8. Moreover DisplayLink's contention that it had "no obligation to disclose these exhibits [referenced in this background section] under Patent Local Rule 4-3(b)" is similarly incorrect. Opposition Brief at 5:4-8.

As further detailed below, Dr. Jones and DisplayLink advance substantive claim construction positions in this so-called background section. This section (as well as portions of

3

the construction section) contains references to the undisclosed exhibits and evidence that are at issue in this motion. As a practical matter, it is impossible to distinguish which portions of DisplayLink's argument depend on this undisclosed evidence and which do not, as these exhibits and related arguments are intertwined throughout the entirety of the Jones Declaration and the Responsive Brief.

### 1. Dr. Jones Makes Substantive Arguments For Displaylink's Proposed Construction Of VGA In The Background Section Of His Declaration

Dr. Jones starts arguing against for DisplayLink's constructions and against MCT's in the <u>background section</u> of his declaration:

> It is important to note that the VGA standard is <u>not</u> capable of supporting SVGA specific commands and/or instructions. Stated another way, while an SVGA enabled controller or display device can render and present VGA signals, a VGA enabled PC or display device <u>can not</u> render and present the full range of SVGA signals.

Jones Decl. at ¶ 13 (emphasis added). This paragraph relates to Dr. Jones' opinion testimony on the scope of VGA – testimony that DisplayLink intends to rely on to support its constructions.

Dr. Jones continues to discuss (in the background section) his perceived further limitations on VGA:

> Furthermore, I have read page 19 of MCT's opening brief where they attempt to equate VGA with such later developed graphics standards as SVGA, XGA or Extended Graphics Array, SXGA or Super Extended Graphics Array, UXGA or Ultra Extended Graphics Array, and QXGA or Quad Extended Graphics Array. <u>Without question, a person of ordinary skill in the art of the '788 Patent would not confuse Video Graphics Array</u> with such later developed graphics standards as Super Video Graphics Array, Extended Graphics Array, Super Extended Graphics Array, Ultra Extended Graphics Array, Quad Extended Graphics Array or any other later developed graphics standard.

Jones Decl. at ¶ 13 (emphasis added). Again, this so-called "background" information – which DisplayLink represents does <u>not</u> contain Dr. Jones' opinions on claim construction – in reality does exactly that.

Dr. Jones goes on with further improper argument in paragraph 14 of his Declaration:

> A person of ordinary skill would understand that VGA refers to more than a 15-pin-D-subminiature connector. VGA also includes the type and nature of the

4

> display signals that can be sent to a display device. An SVGA standard monitor uses the same physical connector but <u>would not be considered a VGA monitor</u> because a VGA monitor could not use or process the full range of SVGA signals. Similarly, an SVGA signal that is sent to a display device <u>would not be considered to be a VGA signal to such a device</u>.

Jones Decl. at ¶ 14 (emphasis added).  By advancing these arguments through the supposedly neutral background section, DisplayLink is improperly advancing substantive claim construction arguments (which it will plausibly rely on later) without alerting MCT or the Court.  DisplayLink should not be permitted to advance these arguments on the one hand and argue to the Court that this background section "do[es] not constitute 'evidence'" on the other.

### 2. Similar To Its VGA Arguments, DisplayLink Also Attempts To Advance Substantive USB-Related Testimony Through The Background Section Of The Jones Declaration

Like with its VGA arguments, DisplayLink tries to improperly limit the scope of USB through the use of extrinsic evidence in the form of Dr. Jones' testimony and related exhibits (disclosed and undisclosed).  For example, Dr. Jones refers to a previously undisclosed USB-related website in the purported background section of his declaration to advance DisplayLink's limitation <u>argument</u>:

> As of today, USB 1.0, 1.1, and 2.0 are the <u>only USB specifications</u>. These are the only USB specifications prepared, approved and adopted by USB Implementers Forum, Inc., ("USB IF") the corporation founded by the developers of USB to provide a support organization and forum for the advancement and adoption of USB technology. <u>See, http://www.usb.org/developers/docs/</u>.

Jones Decl. at ¶ 17 (emphasis added).  Again, Dr. Jones is using the background section and the exhibits therein to advance substantive claim construction arguments that DisplayLink can rely on later.  Similarly, Dr. Jones goes on to imply that MCT's proposed construction is too broad:

> Indeed, while many other serial bus topologies exist – some of which may have one or more characteristics similar to that of USB – but which are not implemented in accordance with one of the USB specifications, such interfaces are interfaces by another name.

Jones Decl. at ¶ 17 (emphasis added).  Similar to the substantive VGA discussion in the background section, the USB discussion is also substantive, rather than tutorial.

Accordingly, this creates further confusion for MCT and the Court as to what exactly is the "evidence" that DisplayLink intends to rely on.  Therefore, these USB-related arguments made in the background section of the Jones Declaration provide this Court with even more reason to reason to strike the Jones Declaration.

### 3. Dr. Jones Also Makes Substantive Prior Art-Related Arguments In The Background Section

Finally, DisplayLink also attempts to preview its prior art argument through the background section - again improperly advancing substantive arguments (in this case not even relevant to claim construction) under the guise of a "technology tutorial:"

> Early efforts at sending video over a USB, particularly USB-to-VGA conversion, may be found in, for example, [undisclosed] <u>Exhibits 11 to 14</u>.

Jones Decl. at ¶ 22 (emphasis added).  Again, DisplayLink previously failed to disclose its intent to rely on Exhibits 11 to 14 for any purpose.  Here, these Exhibits are clearly being introduced to preview a prior art-related argument which is both substantive and not relevant to the claim construction hearing.

## C. **CONTRARY TO DISPLAYLINK'S CONTENTIONS, MCT DID NOT WAIVE ITS RIGHT TO DEPOSE DR. JONES FURTHER**

DisplayLink further contends that "MCT fully deposed Dr. Jones regarding all of his claim construction opinions and his critique of the claim constructions proposed by MCT." Opposition Brief at 9.  However, DisplayLink ignores the fact that <u>none</u> of the aforementioned exhibits or the background section was produced prior to his deposition.  Moreover, DisplayLink failed to set forth in the Joint Claim Construction Chart that it would rely on Dr. Jones for <u>any</u> extrinsic evidence.  Again, this is in direct conflict with MCT's full and complete disclosure where it advised DisplayLink that it may rely on Dr. Min for extrinsic support in connection with two terms – USB and VGA.  DisplayLink's surprise submission of the 27-page Jones

6

**MAGIC CONTROL TECHNOLOGY'S REPLY TO DISPLAYLINK CORPORATION'S
OPPOSITION TO MOTION TO STRIKE
CASE NO.:  5:07-CV-01998-RMW**

Declaration and the over 100 references to that declaration in the Responsive Brief for claim interpretation is unfair and has prejudiced MCT.

### D. SANDISK IS NOT APPLICABLE UNDER THE FACTS OF THIS CASE

Displaylink cites to Sandisk Corp. v. Lexar Media, Inc., 1999 U.S. Dist. LEXIS 2682 (N.D. Cal. Mar. 4, 1999) in attempt to justify its failure to disclose Exhibits 11 and 14 to Dr. Jones' Declaration. Opposition Brief at 6. SanDisk is merely unpublished persuasive authority. In any event, SanDisk does not impact the analysis of the many undisclosed exhibits that were undisputedly outside of the prosecution history.

Furthermore, SanDisk court noted that the moving party for the motion to strike filed in that case "has not demonstrated that it has been prejudiced by [the] untimely disclosure." Id. at *12. However, in this case MCT has given specific analysis demonstrating how it has been prejudiced by the untimely DisplayLink disclosure (see above). For example, Dr. Jones expressly stated that he relied on various exhibits including Exhibits 11 and 14 (Jones Decl. at ¶ 4), particularly for his improper substantive prior art-related arguments in the background section (Jones Decl. at ¶ 22). SanDisk is therefore distinguishable from the facts of this case.

## III.   CONCLUSION

By ignoring the Local Patent Rules' disclosure requirements in its Markman submission, DisplayLink has created this tangled evidentiary mess, but wants MCT and this Court to clean it up by simply "ignoring" its belatedly submitted evidence. This conduct, however, in addition to prejudicing MCT, has created an extremely confusing record, both for this court and for the Federal Circuit. MCT should not have to pay the price for DisplayLink's disregard of the Rules.

Accordingly, MCT respectfully requests that this Court strike the Jones Declaration, Exhibits 9, 11-16, as well as the undisclosed web pages cited in the Jones Declaration. MCT also requests that this Court strike the portions of DisplayLink's Responsive Brief that correspond to the Jones Declaration. If this Court does not grant this relief, MCT requests that it be given the opportunity to cross-examine Dr. Jones at the Markman hearing.

| | |
|---|---|
| Dated: April 11, 2008 | WANG, HARTMANN, GIBBS & CAULEY, PLC<br>A Professional Law Corporation<br><br>By: /s/ Richard F. Cauley<br>　　Richard F. Cauley<br>　　Franklin E. Gibbs<br>　　Erick P. Wolf<br>　　Attorneys for Defendant and Counterclaim Plaintiff |

**MAGIC CONTROL TECHNOLOGY'S REPLY TO DISPLAYLINK CORPORATION'S OPPOSITION TO MOTION TO STRIKE**
**CASE NO.: 5:07-CV-01998-RMW**