# EXHIBIT F

1  **WANG, HARTMANN, GIBBS & CAULEY, P.C.**
A Professional Law Corporation
2  Richard F. Cauley (SBN: 109194)
Franklin E. Gibbs (SBN: 189015)
3  Erick P. Wolf (SBN: 224906)
1301 Dove Street, Suite 1050
4  Newport Beach, CA 92660
Telephone: (949) 833-8483
5  Facsimile: (949) 833-2281

6  Attorneys for Defendant and
Counterclaim Plaintiff

7

8

9                  **UNITED STATES DISTRICT COURT**

10                **NORTHERN DISTRICT OF CALIFORNIA**

11  DISPLAYLINK CORPORATION, a          Case No. 5:07-CV-01998-RMW
    Washington corporation
12
                   Plaintiff,
13                                       **MAGIC CONTROL TECHNOLOGY'S**
    vs.                                  **THIRD SUPPLEMENTAL**
14                                       **OBJECTIONS AND RESPONSES TO**
                                         **DISPLAYLINK CORPORATION'S**
15  MAGIC CONTROL TECHNOLOGY,            **INTERROGATORIES, SET NO. ONE**
    CORPORATION, a Taiwanese Corporation;
16
17                 Defendant.

18
    AND RELATED COUNTERCLAIMS
19

20

21

22

23

24

25

26

27

28

- 1 -

| | |
|---|---|
| **PROPOUNDING PARTY:** | Plaintiff, DISPLAYLINK CORPORATION |
| **RESPONDING PARTY:** | Defendant MAGIC CONTROL TECHNOLOGY |
| **SET NUMBER:** | One |

## PRELIMINARY STATEMENT

1. Magic Control Technology's ("MCT") third supplemental responses to DisplayLink Corporation's ("DisplayLink") First Set of Interrogatories are made to the best of MCT's present knowledge, information and belief. MCT reserves the right to supplement and amend these responses should future investigation indicate that such supplementation or amendment is necessary.

2. The responses herein are made solely for the purpose of and in relation to this action. Each response is given subject to all appropriate objections (including, but not limited to, objections concerning privilege, competency, relevancy, materiality, propriety and admissibility). All objections and grounds, therefore, are reserved and may be interposed at any time.

3. MCT incorporates by reference each and every general objection set forth below into each and every specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response shall not be interpreted as a waiver of any general objection to that response.

4. By supplementally responding to DisplayLink's First Set of Interrogatories, MCT does not waive any objection that may be applicable to: (a) the use, for any purpose, by DisplayLink of any information or documents given in this response to DisplayLink's First Set of Interrogatories; of (b) the admissibility, relevancy or materiality of any of the information or documents at issue in this case.

## GENERAL OBJECTIONS

1. MCT objects to each and every interrogatory, and to DisplayLink's accompanying instructions and definitions, to the extent that they purport to impose additional burdens or duties

**MAGIC CONTROL TECHNOLOGY'S THIRD SUPPLEMENTAL OBJECTIONS AND RESPONSES TO
DISPLAYLINK CORPORATION'S INTERROGATORIES, SET NO. ONE**

1  on MCT that exceed to scope of reasonable and permissible discovery under the Federal Rules of
2  Civil Procedure or the local rules.

3      2. MCT objects to each and every interrogatory to the extent it seeks information
4  protected by attorney-client privilege, the work product immunity doctrine, or any other
5  applicable law, protection or doctrine.  The production of any privileged information or
6  document by MCT is unintentional and MCT does not intend to waive any applicable objection
7  or privilege as a result of such production or disclosure.

8      3. MCT objects to each and every interrogatory to the extent it is overly broad, unduly
9  burdensome, oppressive, or constitutes an abuse of process, particularly when the interrogatory is
10 unduly burdensome in view of the cost necessary to investigate weighed against DisplayLink's
11 need for the information.

12     4. MCT objects to each and every interrogatory to the extent it requires MCT to make a
13 legal conclusion and/or render an expert opinion.

14     5. MCT objects to each and every interrogatory as overbroad and unduly burdensome to
15 the extent it is unlimited in temporal scope or otherwise not limited to a time frame that is
16 relevant to this litigation and the patent-in-suit.

17     6. MCT objects to each and every interrogatory to the extent it seeks information that
18 MCT objects to each and every interrogatory to the extent it seeks information that MCT is not
19 permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

20     7. MCT objects to each and every interrogatory that seeks information related to any
21 MCT product in or under development.  Such information is not relevant to this lawsuit nor is it
22 reasonably calculated to lead to the discovery of admissible evidence.

23     8. MCT objects to each and every interrogatory to the extent it is cumulative and
24 duplicative of information, documents or disclosures previously provided to DisplayLink.

25     9. MCT objects to each and every interrogatory to the extent it seeks information already
26 in DisplayLink's possession or available in the public domain, as such information is as readily
27 available to DisplayLink as to MCT.

28

**MAGIC CONTROL TECHNOLOGY'S THIRD SUPPLEMENTAL OBJECTIONS AND RESPONSES TO
DISPLAYLINK CORPORATION'S INTERROGATORIES, SET NO. ONE**

1     **SPECIFIC OBJECTIONS AND RESPONSES**

2          Each of the foregoing objections is incorporated into the following responses, whether or

3     not specific reference to the same is made:

4     **INTERROGATORY NO. 1:**

5          Separately for the alleged invention defined by each claim in the Asserted Patent,

6     describe in detail the facts and circumstances that explain how and when the alleged invention

7     was first conceived and first reduced to practice, and identify all facts and evidence that support

8     Your description, including without limitation, all persons with knowledge of the alleged

9     conception and/or reduction to practice and all documents that constitute, demonstrate, or relate

10    to the alleged conception and/or reduction to practice.

11    **THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

12         Objection. This interrogatory is overly broad and unduly burdensome because it requests

13    MCT to identify "all facts and evidence," "all persons" and "all documents." The terms

14    "separately for the alleged invention defined by each claim" are vague and ambiguous. This

15    interrogatory seeks information that is neither relevant nor likely to lead to the discovery of

16    admissible evidence. MCT also objects to this request to the extent it is premature and/or

17    duplicative of the Patent Local Rules. MCT also objects to this request to the extent it requests

18    information protected by the attorney-client privilege or the work product doctrine.

19         Subject to these objections and the general objections set forth above, MCT responds as

20    follows: The invention claimed in the '788 patent was conceived in early 2000 by Pei Chung Liu

21    of MCT. Since 1996, MCT was in the business of designing and implementing technological

22    solutions such as the USB Docking Station for brands such as Targus. A docking station, a.k.a.

23    port replicator, is a device that provides a simplified way of "plugging-in" a portable laptop

24    computer to common computer peripherals. The use of a docking station quickly enables a

25    laptop computer to become a substitute for a desktop computer, without sacrificing the mobile

26    computing functionality of the machine. In this way, all the peripheral devices such as display,

27    speaker, Internet connection, Keyboard, Mouse, USB flash drive are plugged-in to the docking

28    station, where the laptop computer connects to the docking station via a single USB interface.

- 4 -

1   The users can take advantage of USB's Plug-and-Play feature and quickly unplug from all the
2   peripheral devices if they have to take their laptop computer on the road.  In addition, laptop
3   computers are designed toward the goal of bring small and portable by eliminating large
4   connectors such as VGA, PS/2, Serial, and Parallel ports.  Since 1996, MCT has been designing
5   various types of USB docking stations to meet this requirement by supporting many legacy
6   interface/connectors that were removed from the newer laptop computers.  Mr. Liu recognized
7   the need for a USB-based display solution to support an external display through a docking
8   station.  After conception, Mr. Liu and MCT worked toward producing a commercial product.
9           To connect a display, a cable was typically attached to a display port on the computer at
10  one end and to a larger external display on the other end of the cable.  Mr. Liu recognized that
11  this type of display connection was very common, but also somewhat inconvenient.  Usually
12  display ports were on the back of the computer.  A user would have to negotiate around the back
13  of the computer to plug and unplug the display cable.  This prompted Mr. Liu to begin thinking
14  about ways to improve this situation and make the cable connection more user friendly.  Mr. Liu
15  knew immediately this was a long felt and unsolved need in the field.
16          Mr. Liu hit upon the idea that a USB port could be used to drive an external display
17  device.  Many USB ports were on the side of laptop type computers and easier to access than the
18  display port on the back of a machine.  Up to this point in time, Mr. Liu was unaware of anyone
19  using a USB port for such a purpose.  Also, Mr. Liu, being the innovator and leader in the
20  docking port business, was unaware of any competitor who was exploring such an option.  Most
21  of the port replicator uses "passthrough" method by a bundle of extension cables.  The concept
22  of true USB based display was not even considered to be workable due to the small bandwidth of
23  USB interface by comparing with the conventional PCI bus. With our design goal to provide a
24  single cable (USB) docking station, Mr. Liu realized that such an idea would give him a
25  competitive advantage over his competition.
26          Mr. Liu fully appreciated the scope of his invention and was convinced that his novel
27  idea would prove to be a successful commercial product.  Over a period of time Mr. Liu began
28  fully considering the impact and scope of his novel idea.  Mr. Liu considered the technical

**MAGIC CONTROL TECHNOLOGY'S THIRD SUPPLEMENTAL OBJECTIONS AND RESPONSES TO
DISPLAYLINK CORPORATION'S INTERROGATORIES, SET NO. ONE**

1 | aspects of transferring display information across a USB cable, converting the signal to a display

2 | format such as VGA, then to have a VGA device ultimately receive the display signal.

3       At some point in 2000, Mr. Liu contacted Leslie Dotson of Targus to discuss the

4 | invention. Targus immediately saw the potential of Mr. Liu's novel device and Mr. Dotson

5 | assisted in the earlier stage of prototyping this invention as claimed in '788 patent by seeking any

6 | existing support and solution in the market. Mr. Liu diligently pursued his idea by first

7 | considering the requirements and aspects of his invention, then working with companies to

8 | understand the commercial aspects of the invention, and finally filing a patent application in the

9 | United States. Mr. Liu never ceased believing in his invention and pursued his dream with

10 | commitment at all times from conception to filing the patent application.

11       After his invention was placed on the market, there was an immediate demand by

12 | purchasers. At the same time, competitors such as Displaylink began copying Mr. Liu's

13 | invention. Due to this copying even the competitors began experiencing a commercial success

14 | based upon Mr. Liu's novel idea.

15       The invention claimed in the '788 patent was reduced to practice at least as early as the

16 | constructive reduction to practice date of December 11, 2002. Moreover, MCT is further

17 | supplementing its document production with documents pertaining to the invention claimed in

18 | the '788 patent and documents relating to the development of a commercial embodiment of the

19 | invention claimed in the '788 patent. As referenced in the documents, at least the following

20 | persons may have relevant knowledge including Serena Chang, J.J. Chen, Leslie Dotson, Krish

21 | Subramaniam, Shiv Shanker, Chezi Ganesan, Chris Handsel, and Andrew Pargeter. Documents

22 | supporting these facts were produced in the following bates ranges: MCT 0131-0251 and MCT

23 | 1939-2414. Discovery and investigation are ongoing.

24 | **INTERROGATORY NO. 2:**

25       With reference to Federal Circuit Bar Association Model Patent Jury Instruction No.

26 | 10.9.4, attached as Exhibit A, separately for each claim of the Asserted Patent, describe in detail

27 | each and every "objective indication" that You contend supports a finding that the subject matter

28 |

**MAGIC CONTROL TECHNOLOGY'S THIRD SUPPLEMENTAL OBJECTIONS AND RESPONSES TO
DISPLAYLINK CORPORATION'S INTERROGATORIES, SET NO. ONE**

1  of the claim is non-obvious under 35 U.S.C. § 103, and identify, on an "objective indication" by

2  "objective indication" basis, all facts and evidence that support Your contention(s).

3  **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

4      Objection. This interrogatory is overly broad and unduly burdensome because it requests

5  MCT to identify each and every "objective indication" and "all facts and evidence." The terms

6  "separately for each claim of the Asserted Patent" are vague and ambiguous. This interrogatory

7  seeks information that is neither relevant nor likely to lead to the discovery of admissible

8  evidence. This interrogatory calls for an expert opinion on an issue (invalidity) upon which

9  DisplayLink has the burden of proof. MCT also objects to this request to the extent it is

10  premature and/or duplicative of the Patent Local Rules. MCT also objects to this request to the

11  extent it requests information protected by the attorney-client privilege or the work product

12  doctrine.

13      Subject to these objections and the general objections set forth above, MCT responds as

14  follows: Objective indicia of non-obviousness include products covered by the invention, sold

15  both by MCT and by DisplayLink, have been extremely successful in the marketplace, both as

16  stand-alone consumer products and as incorporated into other products, such as monitors and

17  docking stations. Manufacturers of these latter products have been quick to copy MCT's idea

18  and incorporate the patented technology into their products. Prior to the invention there was no

19  reasonable expectation of success, a general skepticism of those in the art, and a long felt but

20  unsolved need for a USB-to-VGA converter. Afterwards there was industry-wide praise for the

21  invention and marketplace success evidenced by MCT and DisplayLink sales. Discovery and

22  investigation are ongoing. MCT anticipates that further investigation and/or discovery from

23  DisplayLink may reveal other indicia of non-obviousness. If necessary, MCT will further

24  supplement its response to this interrogatory with such information.

25  **INTERROGATORY NO. 3:**

26      Separately for each claim of the Asserted Patent, identify all current and former MCT

27  Products that MCT contends practice and/or embody said claim.

28

1  **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

2       Objection. This interrogatory is overly broad and unduly burdensome because it requests

3  MCT to identify "all current and former MCT Products." The terms "separately for each claim

4  of the Asserted Patent" are vague and ambiguous. This interrogatory seeks information that is

5  neither relevant nor likely to lead to the discovery of admissible evidence. This interrogatory

6  may require consideration of issues of claim construction that have not yet been decided. MCT

7  also objects to this request to the extent it requests information protected by the attorney-client

8  privilege or the work product doctrine.

9       Subject to these objections and the general objections set forth above, MCT responds as

10  follows: USB 2.0 VGA Adapters I, II (Model: UVA100, UVA200, UVT100), USB 2.0 VGA

11  LAN Dock (Model: UDLV100), TRITTON Technologies, Inc. (located at 1370 Decision Street -

12  Suite C, Vista, CA 92081) distributes MCT products under the TRITTON brand name in the

13  U.S. including the TRI-UV100::See2 USB to VGA adaptor, KAIREN Co.,Ltd. (located at Hoei

14  BLDG. 5F, 11-1, Miyuki-cho, Tokorozawa-shi, Saitama 359-1115) distributes MCT products

15  under the KAIREN brand name in Japan including the USB20SVGA, USB20SVGA-DG,

16  USB20SVGA-WH, and USB20SVGA-MB Plus. All such products may practice and/or embody

17  one or more claims of the '788 patent. Discovery and investigation are ongoing.

18  **INTERROGATORY NO. 4:**

19       Please identify in detail all damages that MCT contends it is owed as a result of

20  DisplayLink's alleged infringement of the Asserted Patent, including without limitation, the total

21  dollar amount of damages and how such damages are computed and all facts and evidence which

22  support MCT's damages claim. Please include the following information in Your response:

23       (a) MCT's contentions with respect to its basis for seeking damages (that is, does MCT

24           contend that it is entitled to damages on a theory of lost profits, reasonable royalty,

25           price erosion, or any other basis);

26       (b) With respect to each such basis of damages, state in detail how such damages are

27           computed, including the identification of all MCT's products for which lost profits or

28

**MAGIC CONTROL TECHNOLOGY'S THIRD SUPPLEMENTAL OBJECTIONS AND RESPONSES TO
DISPLAYLINK CORPORATION'S INTERROGATORIES, SET NO. ONE**

1    price erosion are claimed, and the rate of any royalty which MCT contends is

2    reasonable and how such rate is computed.

3    **RESPONSE TO INTERROGATORY NO. 4:**

4    Objection. This interrogatory asks MCT to provide an expert opinion and provide legal

5    conclusions prior to the due date for expert reports. The interrogatory is overly broad and

6    unduly burdensome because it requests MCT to identify "all damages," "all facts and evidence,"

7    and "all MCT's products." The terms "contentions with respect to its basis" are vague and

8    ambiguous. This interrogatory seeks information that is neither relevant nor likely to lead to the

9    discovery of admissible evidence. MCT also objects to this request to the extent it is premature

10    and/or duplicative of the Patent Local Rules. MCT also objects to this request to the extent it

11    requests information protected by the attorney-client privilege or the work product doctrine.

12    MCT is seeking lost profit damages based on the profits it would have made on

13    defendants' sales of products incorporating the patented technology. MCT is also seeking price

14    erosion damages based on the reduced prices for its own products as a result of defendants'

15    infringement. MCT is also seeking, for those products for which neither of these damages

16    theories is applicable, a reasonable royalty.

17    MCT cannot, at this time, compute the amount it is claiming under these damages

18    theories because this computation will depend, in large part, on discovery which is yet to be

19    received from DisplayLink.

20    **INTERROGATORY NO. 5:**

21    List all licenses relating to display adapter technology or bus protocol technology to

22    which MCT is a party including, but not limited to, licenses to the '788 patent, including the

23    identity of each party to the license, the duration of each license, the rights granted in each

24    license and each license's financial terms.

25    **RESPONSE TO INTERROGATORY NO. 5:**

26    Objection. The terms "display adapter technology or bus protocol technology" are vague

27    and ambiguous. This interrogatory seeks information that is neither relevant nor likely to lead to

28

**MAGIC CONTROL TECHNOLOGY'S THIRD SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DISPLAYLINK CORPORATION'S INTERROGATORIES, SET NO. ONE**

1  the discovery of admissible evidence. MCT also objects to this request to the extent it requests

2  information protected by the attorney-client privilege or the work product doctrine.

3       Subject to these objections and the general objections set forth above, MCT responds as

4  follows: MCT has yet to license the '788 patent.

5  **INTERROGATORY NO. 6:**

6       Identify every patent and patent application anywhere in the world which is based on a

7  specification substantially the same as that of the '788 Patent and every '788 Related Patent and

8  Application, by stating the country in which such application was made; the serial number of

9  such application; the filing date of such application; the inventor(s) named in such application, if

10  different from the patent-in-suit; the owner of such application; whether or not a patent was ever

11  issued on such application, and, if so, its patent number and date of issuance and whether such

12  application is still pending.

13  **RESPONSE TO INTERROGATORY NO. 6:**

14       Objection. This interrogatory is overly broad and unduly burdensome because it forces

15  MCT to research "every patent and patent application in the world" to determine whether such a

16  document has a "specification substantially the same as that of the '788 Patent." The terms

17  "specification substantially the same" are vague and ambiguous. This interrogatory seeks

18  information that is neither relevant nor likely to lead to the discovery of admissible evidence.

19  MCT also objects to this request to the extent it is premature and/or duplicative of the Patent

20  Local Rules. MCT also objects to this request to the extent it requests information protected by

21  the attorney-client privilege or the work product doctrine.

22       Subject to these objections and the general objections set forth above, MCT responds as

23  follows: MCT is the owner of the following USB-to-VGA converter-related patents:

| Patent Name | Region | App. Date | Patent No. |
|---|---|---|---|
| USB-to-VGA Converter | Taiwan | 10/25/2002 | I 229808 |
| USB-to-VGA Converter | China | 12/13/2002 | ZL 02 2 92566.X |
| USB-to-VGA Converter | USA | 12/11/2002 | US 7,203,788 B2 |

**MAGIC CONTROL TECHNOLOGY'S THIRD SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DISPLAYLINK CORPORATION'S INTERROGATORIES, SET NO. ONE**

| USB-to-VGA Converter | Japan | 9/29/2003 | 3100747 |
| USB-to-VGA Converter | Germany | 10/9/2003 | Nr. 203 15 724.9 |
| USB-to-VGA Converter | Korea | 10/21/2005 | 405501 |

**INTERROGATORY NO. 7:**

Identify each document referenced, studied or relied upon by any of the named inventors of the '788 Patent in the course of conceptualizing, designing, developing, engineering, and/or prototyping any display adapter technology, including, without limitation, any product, publication, patent (whether foreign or domestic), or the written or otherwise recorded suggestion of a colleague or fellow practitioner in the display technology art.

**RESPONSE TO INTERROGATORY NO. 7:**

Objection. This interrogatory is overly broad and unduly burdensome because it requests MCT to identify "each document referenced, studied or relied upon by any of the named inventors," and "any product, publication, patent (whether foreign or domestic), or the written or otherwise recorded suggestion." The terms "conceptualizing, designing, developing, engineering, and/or prototyping," "display adapter technology," and "colleague or fellow practitioner in the display technology art" are vague and ambiguous. This interrogatory seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. MCT also objects to this request to the extent it is premature and/or duplicative of the Patent Local Rules. MCT also objects to this request to the extent it requests information protected by the attorney-client privilege or the work product doctrine.

Subject to these objections and the general objections set forth above, MCT responds as follows: MCT is further supplementing its document production with documents pertaining to the invention claimed in the '788 patent and documents relating to the development of a commercial embodiment of the invention claimed in the '788 patent. As referenced in the documents, at least the following persons may have relevant knowledge including Serena Chang, J.J. Chen, Leslie Dotson, Krish Subramaniam, Shiv Shanker, Chezi Ganesan, Chris Handsel, and Andrew Pargeter. Discovery and investigation are ongoing.

- 11 -

1 **INTERROGATORY NO. 8:**

2       Identify and describe any and all Communications between MCT or MCT salespersons

3 and Sunix, Kensington, ACCO, and/or any other supplier, manufacturer, or reseller concerning

4 the marketing or sale of Accused DisplayLink Products or products embodying the technology

5 described and/or claimed in the '788 Patent, including the date of the Communication, the

6 method of Communication, the identify of each person who participated in the Communication,

7 the detailed content of the Communication, and the identity of each document evidencing or

8 relating in any way to the Communication.

9 **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

10       Objection. This interrogatory is overly broad and unduly burdensome because it requests

11 MCT to describe "any and all Communications." This interrogatory seeks information that is

12 neither relevant nor likely to lead to the discovery of admissible evidence. MCT also objects to

13 this request to the extent it is premature and/or duplicative of the Patent Local Rules. MCT also

14 objects to this request to the extent it requests information protected by the attorney-client

15 privilege or the work product doctrine.

16       Subject to these objections and the general objections set forth above, MCT responds as

17 follows: MCT's U.S. counsel sent out cease and desist letters to several companies producing

18 and/or selling and/or distributing product that infringe the '788 patent. MCT is supplementing

19 its production to include these cease and desist letters and/or any other responsive

20 communications. Documents supporting these facts were produced in the following bates range:

21 MCT 2515-2526. Discovery and investigation are ongoing.

22

23 Dated: May 9, 2008              WANG, HARTMANN, GIBBS & CAULEY

24                            A Professional Law Corporation

25                          By: _____

26                             Richard F. Cauley
                            Franklin E. Gibbs

27                             Erick P. Wolf
                            Attorneys for Defendant and

28                             Counterclaimant Magic Control Technology
                            Corporation

- 12 -

## PROOF OF SERVICE [CCP 1013A(3)]

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California, am over the age of eighteen (18), and not a party to the within action. My business address is: 1301 Dove Street, Suite 1050, Newport Beach, California 92660.

On May 9, 2008 I served the foregoing document, described as

MAGIC CONTROL TECHNOLOGY'S THIRD SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DISPLAYLINK CORPORATION'S INTERROGATOIRES, SET NO. ONE

on the interested parties in this action

XXX   by placing the true copies thereof (or the original where required by law) enclosed in sealed envelopes addressed as follows:

> James Yoon (jyoon@wsgr.com)
> Ryan Smith (rsmith@wsgr.com)
> Stefani E. Shanberg (sshanberg@wsgr.com)
> Brian A. Dietzel (bdietzel@wsgr.com)
> Monica Mucchetti Eno (mmucchetti@wsgr.com)
> Robin L. Brewer (rbrewer@wsgr.com)
> Wilson Sonsini Goodrich & Rosati
> 650 Page Mill Road
> Palo Alto, CA 94304
> *Attorney for Plaintiff Displaylink Corporation*

XXX   BY ELECTRONIC MAIL- I caused such document(s) to be delivered via Electronic mail to the above-mentioned address(es) on May 9, 2008.

XXX   BY U.S. MAIL - I caused such envelope to be deposited in the United States Mail, First Class Postage Prepaid at Newport Beach, California on May 9, 2008.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the United States Postal Service on that same day, in the ordinary course of business. I am aware that on motion of the parties served, service is presumed invalid if the postal cancellation date, or postage meter date, is more than one day after the date of deposit for mailing in the affidavit.

XXX   I declare that I am employed in the office of a member of the Bar of this Court, at whose discretion the service was made.

XXX   I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed on May 9, 2008, at Newport Beach, California.

Amber Yordy